TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00088-CR







Tommy James Booker, III, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT


NO. 96-389-K368, HONORABLE WILLIAM S. LOTT, JUDGE PRESIDING








 The jury found appellant guilty of the offense of possessing with intent to deliver
a controlled substance, cocaine, in the amount of four grams or more. See Tex. Health & Safety
Code Ann. § 481.112 (West Supp. 1998). The trial court assessed punishment, enhanced by a
prior felony conviction, at confinement for sixty years. Appellant asserts two points of error,
namely: (1) representation by ineffective counsel in the trial court and (2) the trial court's
overruling of appellant's objection to the prosecutor's argument. We will overrule appellant's
points of error and affirm the judgment of the trial court.

 Evidence favorable to the jury's verdict showed that Cedar Park Police Lieutenant
Charles Dempsey secured the cooperation of Bobby Barnes, a convicted felon who was in custody
on a narcotic violation charge, to arrange a call for the delivery of two ounces of cocaine. 
Barnes's phone calls, recorded by Dempsey, resulted in a voice later identified by Dempsey as
belonging to appellant, agreeing to deliver the cocaine at a convenience store. Details of the call
reflected that appellant would arrive at the store in a gold Mazda and would call a number
furnished by Barnes. Barnes would meet the seller (appellant) three minutes after the call. The
number furnished the seller was that of an "undercover phone" at the Cedar Park Police
Department.

 Surveillance was established by officers at the convenience store. Upon arrival of
the Mazda at the convenience store appellant was observed placing a call on a pay telephone. 
Dempsey, a member of the surveillance team, was in contact with officer Pat Golden who was
monitoring the "undercover phone." The observations of the two officers as to the time appellant
placed the call and the telephone rang at the station, and the time appellant concluded the call,
coincided in every detail.

 Officers converged on appellant and the two other occupants of the vehicle. 
Cocaine was found on the person of the front seat passenger. Laboratory analysis showed the
seized substance to be 41.75 grams of cocaine. Dempsey was only privy to Barnes's conversation
arranging for the sale. After appellant was arrested Dempsey had his first opportunity to hear
appellant's voice. Dempsey testified that after appellant was placed in jail, appellant made him
an offer to be a "co-operative person--could probably do some other persons." Dempsey's
recognition of appellant's voice on the recorded calls was based on these two encounters with
appellant. Neither Barnes nor appellant testified. 

 Appellant contends that trial counsel's failure to adequately prepare for trial and
repeated failure to object to hearsay statements and leading questions resulted in his receiving
ineffective assistance of counsel in the trial court.

 The burden of proof an accused has in proving ineffective assistance is set forth
with clarity and completeness in Ex parte Welborn, 785 S.W.2d 391, 393 (Tex. Crim. App.
1990):


 The test to be applied in determining ineffective assistance of counsel is
found in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674
(1984). As this Court has previously noted, no mechanistic formula is provided by
Strickland:


 The benchmark for judging any claim of ineffectiveness must
be whether counsel's conduct so undermined the proper functioning
of the adversarial process that the trial cannot be relied on as having
produced a just result.


Butler v. State, 716 S.W.2d 48, 54 (Tex. Cr. App. 1986) quoting Strickland, 104
S.Ct. at 2064. A defendant seeking relief under Strickland must show that
counsel's performance was deficient and the defendant must show that the deficient
performance prejudiced the defense. Butler, 716 S.W.2d at 54. When clarifying
the "prejudice" prong of this two part test, the Strickland Court held:


 The defendant must show that there is a reasonable
probability that, but for counsel's unprofessional errors, the result
of the proceedings would have been different. A reasonable
probability is a probability sufficient to undermine confidence in the
outcome.


Ex parte Guzmon, 730 S.W.2d 724, 733 (Tex. Cr. App. 1987) quoting Strickland,
104 S.Ct. at 2068.


 This standard has never been interpreted to mean that the accused is entitled
to errorless or perfect counsel. Bridge v. State, 726 S.W.2d 558, 571 (Tex. Cr.
App. 1986). When reviewing a claim of ineffective assistance of counsel, judicial
scrutiny of counsel's performance must be highly deferential. 466 U.S. at 689, 104
S.Ct. at 2065, 80 L.Ed.2d at 694. Whether the Strickland standard has been met
is to be judged by "the totality of the representation." Id.; Ferguson v. State, 639
S.W.2d 307, 310 (Tex. Cr. App. 1982). Isolated instances in the record reflecting
errors of commission or omission do not cause counsel to become ineffective, nor
can ineffective assistance of counsel be established by isolating or separating out
one portion of the trial counsel's performance for examination. Bridge, 726
S.W.2d at 571; Johnson v. State, 629 S.W.2d 731, 736 (Tex. Cr. App. 1981). An
applicant must show omissions or other mistakes made by counsel that amount to
professional errors of a magnitude sufficient to raise a reasonable probability that
the outcome of the trial would have been different but for the errors. Butler, 716
S.W.2d at 54. The test is to be applied at the time of trial, not through hindsight. 
Wilkerson v. State, 726 S.W.2d 542, 548 (Tex. Cr. App. 1986), cert. denied, 480
U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987). 



 Appellant faults his trial court counsel's preparation. Appellant characterizes the
tape recording of the conversation between Barnes and the seller of the cocaine as the nexus of the
case. It appears to be appellant's position that trial counsel should have filed pretrial motions at
an earlier date and pressed for a ruling on the motions. A review of the transcript reflects that
appellant's trial co-counsel filed sixteen motions.

 The majority of the defense motions were for discovery of the State's evidence. 
Other motions were to suppress evidence, raise the defense of entrapment, and a motion in limine
requesting the trial court to instruct the State to refrain from making references to fifteen separate
matters. The trial court expressly refused to rule on a number of these motions prior to trial. It
is difficult to fault counsel for failing to continue to press the trial court to rule once it has
declined. A number of defense motions were overruled by the trial court.

 Appellant faults defense counsel for failing to object when the tape recording was
offered in evidence. It appears to have been trial counsel's strategy to attack the weakness of the
State's identification of appellant as the seller on the telephone. This very well may have been the
sounder trial tactic since appellant has not demonstrated how the tape could have been excluded. 
While hindsight may dictate that it would have been a better tactic to object to certain hearsay
evidence, defense counsel may have felt that continuous objections before a jury to matters that
could have been proven with additional evidence could affect appellant's case adversely.

 The thrust of the defense in the trial court appears to have been to attack the weight
of the evidence. Given the nature of the State's evidence, this does not appear to have been an
unwise trial tactic. Defense counsel emphasized that the only person privy to the phone call of the
narcotic seller was Barnes who had prior convictions for murder, robbery, and sale of narcotics
to minors. At the time Barnes made the call, he was in custody facing another narcotic charge. 
Defense counsel noted that Barnes did not testify and argued that it was understandable that a
person with his record would resort to any lengths in an effort to reduce his punishment on the
charge pending against him. Counsel also challenged Dempsey's identification of appellant's voice
based on two conversations following appellant's arrest. Defense counsel also questioned why the
State had to resort to offering a copy of the tape recording rather than the original.

 When viewed in the context of the entire cause, errors, if any, defense counsel
made were not of sufficient magnitude to raise a reasonable probability that the outcome of the
trial would have been different but for the errors. Appellant's first point of error is overruled.

 In his second point of error, appellant urges that the trial court erred in permitting
the prosecutor to attack defense counsel during the State's closing argument to the jury. Appellant
directs our attention to the following arguments by the prosecutor: (1) inferring that the trial was
twice as long as it should have been because of defense counsel; (2) referring to the defense theory
as "goofy"; (3) "It drives me insane to think they could be asking y'all to assume or doubt the
evidence that you have heard in this case"; and (4) "I can't imagine that they're asking you to be
brain dead like they say they are. And they are brain dead about several things . . . Brain dead
about the law."

 Unlike cases cited by appellant (1) where the prosecutor made an attack on the
integrity of the defense counsel, the thrust of the prosecutor's argument appears to be an attack
on defense counsel's ability to understand the law and competence to try a law suit.

 The test for determining whether jury argument constitutes reversible error is set
forth in Cantu v. State, 939 S.W.2d 627, 633 (Tex. Crim. App. 1997), cert. denied, 139 L. E. 2d
399 (1998):


[J]ury argument must be extreme or manifestly improper, or inject new and
harmful facts into evidence to constitute reversible error. In determining whether
jury argument is extreme or manifestly improper, we look at the entire record of
final arguments to determine if there was a willful and calculated effort on the part
of the State to deprive appellant of a fair and impartial trial.


(Citations omitted).


 The prosecutor's efforts to belittle defense counsel's abilities do not comport with
appropriate professional conduct and cannot be condoned. However, when we look at the entire
record of final arguments, it appears that the prosecutor's arguments were at least partially invited. 
Defense counsel suggested impropriety on the part of the State in not introducing the original tape
of the phone conversation, inferring that there may have been additional information on it. Also,
defense counsel challenged the State's tactics in changing its charge against appellant.

 Applying the Cantu test, we are unable to conclude that the prosecutor's arguments
were so extreme or manifestly improper as to constitute reversible error. Moreover, we conclude
beyond a reasonable doubt that any error in the prosecutor's argument made no contribution to the
conviction or punishment. See Tex. R. App. P. 44.2(a). Appellant's second point of error is
overruled.

 The judgment is affirmed.



 

 Tom G. Davis, Justice

Before Chief Justice Yeakel, Justices Aboussie and Davis*

Affirmed

Filed: October 1, 1998

Do Not Publish




* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1988).
1. In Sunday v. State, 745 S.W.2d 436, 440 (Tex. App.--Beaumont 1988, pet ref'd), the
prosecutor argued that the defendant did not come up with his claim of self-defense until after he
hired an attorney. In Byas v. State, 906 S.W.2d 86, 87 (Tex. App.--Fort Worth 1995, pet. ref'd),
the prosecutor argued, "I've seen defense counsel act as a very slick attorney from voir dire all
the way up."



 the errors. Appellant's first point of error is overruled.

 In his second point of error, appellant urges that the trial court erred in permitting
the prosecutor to attack defense counsel during the State's closing argument to the jury. Appellant
directs our attention to the following arguments by the prosecutor: (1) inferring that the trial was
twice as long as it should have been because of defense counsel; (2) referring to the defense theory
as "goofy"; (3) "It drives me insane to think they could be asking y'all to assume or doubt the
evidence that you have heard in this case"; and (4) "I can't imagine that they're asking you to be
brain dead like they say they are. And they are brain dead about several things . . . Brain dead
about the law."

 Unlike cases cited by appellant (1) where the prosecutor made an attack on the
integrity of the defense counsel, the thrust of the prosecutor's argument appears to be an attack
on defense counsel's ability to understand the law and competence to try a law suit.

 The test for determining whether jury argument constitutes reversible error is set
forth in Cantu v. State, 939 S.W.2d 627, 633 (Tex. Crim. App. 1997), cert. denied, 139 L. E. 2d
399 (1998):


[J]ury argument must be extreme or manifestly improper, or inject new and
harmful facts into evidence to constitute reversible error. In determining whether
jury argument is extreme or manifestly improper, we look at the entire record of
final arguments to determine if there was a willful and calculated effort on the part
of the State to deprive appellant of a fair and impartial trial.


(Citations omitted).


 The prosecutor's efforts to belittle defense counsel's abilities do not comport with
appropriate professional conduct and cannot be condoned. However, when we look at the entire
record of final arguments, it appears that the prosecutor's arguments were at least partially invited. 
Defense counsel suggested impropriety on the part of the State in not introducing the original tape
of the phone conversation, inferring that there may have been additional information on it. Also,
defense counsel challenged the State's tactics in changing its charge against appellant.

 Applying the Cantu test, we are unable to conclude that the prosecutor's arguments
were so extreme or manifestly improper as to constitute reversible error. Moreover, we conclude
beyond a reasonable doubt that any error in the prosecutor's argument made no contribution to the
conviction or punishment. See Tex. R. App. P. 44.2(a). Appellant's second point of error is
overruled.

 The judgment is affirmed.



 

 Tom G. Davis, Justice